The case is now submitted, and we'll move to the second case set for argument, which is Krzensi v. Wellpinit School District, case number 25-3308. Good morning, Your Honors. I would like to reserve five minutes for rebuttal. Yeah. It's good to see you. It's only been, what, ten days? Yes. Yes, Your Honor. Okay. Have at it. Okay. Thank you, Your Honor. I may have pleased the Court. My name is Matt Crotty. I represent the appellant, David Krzesni. The District Court's order granting summary judgment should be reversed for two primary reasons. First, the District Court applied the wrong legal standard in requiring Mr. Krzesni to rebut John Adkins. That was the main decision-maker. Mr. Adkins' testimony that he was not aware of the reports Mr. Krzesni made to the Department of Education, the Court required that that contesting be made with direct evidence, and that is not what Congress requires. That's point number one. And then point number two, the District Court erred as a matter of law, in fact, when it determined that a non-renewal of a non-certificated employee's contract did not constitute a discharge. I'll first start with the District Court applying the wrong legal standard. The NDAA, which incorporates 5 U.S.C. 1221E, states, in relevant part, that a whistleblower like Mr. Krzesni can use circumstantial evidence to prove whether the decision-maker was aware of the protected activity. So in this case, the District Court erred, and it erred in citing a antitrust case, the T.W. Electric case, and finding that Mr. Krzesni had to essentially rebut Mr. Adkins' I didn't know testimony with direct testimony, which essentially would have to make Mr. Krzesni, you know, in the room to say, no, that's not the case. And here, numerous examples of Mr. Adkins' knowledge of Mr. Krzesni's protected activity. What protected activity are we talking about here? Because the point in time matters quite a lot. It does. So in this instance, Your Honor, it would be the Mr. Krzesni choosing to add to the APR, the Annual Performance Review, in late April 2023, the fact that the district did, in fact, spend $55,000 to fund this Hawaii trip. How was that whistleblowing? Under the NDAA, all that is required of Mr. Krzesni, and again, the law requires or allows a disinterested observer to look at the surrounding circumstances. So here are the surrounding circumstances. I'm a disinterested observer. I don't see whistleblowing there. You have the – well, again, the surrounding circumstances are as follows. Mr. Krzesni, back in March, telling Rainey Anderson, the business manager, that be careful, you can't use – the DOE has not allowed us to use federal funds. But he expected approval would eventually come. He didn't say that that was going to be verboten. He said, we got some pushback, they're looking at it, I think we'll eventually approve. But that's entirely different than saying go ahead and do it. Well, but this is a premise leading to your whistleblowing in the April communication, and I'm looking at that, and nothing suggests in that report anything wrong had been done. He's reporting what he kind of has to report in a factual report of what was done with the funds. I don't know how he could have filed a report without mentioning, oh, yeah, we spent $50,000 taking this group to Hawaii and tried to explain why that matched the purposes of the grant. But I'm looking at that, and I don't understand how your disinterested observer could clean from there something that is a protected blow of a whistle. So what should I be looking at that would persuade me differently? You should look at what happened when Mr. Kresny comes back from Hawaii and he starts to collect the information. The question of why was he on the trip to Hawaii, but I won't go there. It was understanding that he had to go. But, again, that's a rough. He doesn't have to go if he's the administrator of the grant, but he wasn't the beneficiary. He could have taken another student to take the benefit of the grant. But that's a side shot. It is a side shot. I think going to Hawaii is a great thing, which everybody in this room should do early and often, but really? No, but Mr. Kresny says that it was his intent to put that information in the APR and that it's important because he then follows up with the DOA on May 8th. Well, see, but that date doesn't seem to matter nearly as much because your brief tells us the process of not renewing his contract began on May 1st. It says it twice. And so you get to May 8th. That's kind of cows out of the barn by then. No, but you're on your you're trying to get me to link to the April APR to whistle because that's the one I think that matters. And I think May 8th is going to be too late to make your case because the process by Mr. Atkins or Dr. Atkins, whatever his title would be. And he's the person you're pointing to. But he'd already started the process. But May 8th goes to Mr. Kresny's whistleblowing intent that he's taking what the court seems to be a benign report. And again, there's no requirement under the law that whistleblowing has to happen in a certain format. But you're telling us that Atkins knew based on that APR report before he initiated the process of not renewing the contract, which your brief tells us was on May 1st. And so I'm looking at what Atkins could have known by April, and I'm having trouble understanding how Atkins could have known he's getting rid of this whistleblower because of the whistle. I mean, there are dog whistles that are silent to human ears, but I really don't hear much from that whistle when I look at that April report. Mr. Atkins testified in his deposition that he was aware. Did you know that Mr. Kresny had reported misuse of the Department of Education? This is E.R. 290. He says yes. When did you first find out? Answer, within a few days after the Hawaii trip. And then Mr. Kresny takes a break and he corrects his testimony. And in correcting that testimony, he says some more false things. He says, first off, he's never done a deposition. That was incorrect. This is Atkins, not Kresny. I'm sorry? You just said Kresny corrected his testimony. No, Mr. Atkins. I'm sorry, Your Honor. Yes, it was Mr. Atkins who corrected his testimony, falsely saying he'd never done a deposition. Because then it all goes to credibility. Also, Mr. Atkins, in correcting his deposition testimony after the break, says he, and this is on E.R. 292, he, Atkins referring to Kresny, said that the grant would pay for it. That is also incorrect because if you look at 3 E.R. 544, that would be the March 2, 2023, email. He does not say that. He says, be careful. There's been no approval yet. So, again, this goes to the credibility that before May, early May, 2023. May 1, according to your brief, is when the process of not renewing the contract started. So I look at that date as something. What do we have that suggests that Atkins is taking that action on May 1st because of the blow of the whistle? Setting the whistleblowing aside, you also have. Well, this is all about whistleblowing. If you don't have that, then there's really not the NDAA action, is there? But there's also the state court wrongful discharge action based on Mr. Kresny. She's a fact, again, summary judgment, reasonable inferences, non-moving party, that Mr. Atkins was aware that Mr. Kresny helped Jamie Lovato report a sexual abuse allegation. And that was also before May 1st. But was that in the complaint or in anything in this case prior to this briefing? Yes, it's in the complaint. It's in the briefing. I thought you had a bigger problem with the state law claim, which was it was a non-renewal of a contract, not a termination. And under state law, maybe I'm misunderstanding. Correct me. There's issues of fact in that regard, Your Honor. First off, there is no. An issue of fact as to whether it was not renewed or whether you think he was actually terminated and it wasn't just not renewed. Legally, there is no state published appellate or published state Supreme Court Washington state case that says as a matter of law, the non-renewal of a contract is not a discharge. It's an issue of fact. And it's an important issue of fact here because Mr. Kresny was a non-certificated employee. And under the operative law, that's R.C.W. 28A.405-210. It's wrongful discharge, right? Correct. But the district court said as a matter of law that, quote, unquote, non-renewal of a contract is not a discharge, which respectfully, again, is not supported by the law or the facts. But under that R.C.W. What about the Roberts v. Dudley case from Washington in 2000? The tort of wrongful discharge in violation of public policy clearly applies only in a situation where an employee has been discharged. And here there's an issue of fact as to whether Mr. Kresny was discharged. Here's why. In order – so under the continuing contract R.C.W., if the district wanted to, quote, unquote, non-renew his contract, the district needed to let Mr. Kresny know in writing before May 15th of each year. So this is why Mr. Adkins is saying I told Mr. Kresny on May 8th, and this is why Mr. Kresny and Jamie Lovato, supported by contemporaneous emails and text messages, say that we didn't know that we were being non-renewed until May 16th. So that's an issue of fact for the jury. Well, it seems like an entirely different cause of action. Yes, and it's a cause of action that was pled. It was briefed on summary judgment. It's been argued in the briefing, essentially in our reply brief. Well, I guess I'm trying to understand. You don't disagree that his separation was created by non-renewal? I do disagree. You think that's a question of fact whether it was non-renewal or whether it was discharge? Exactly. But you agree – do you agree that if it was non-renewal that it would not be covered under the act? I actually – I don't agree with that. You don't agree with that.  I mean I'm reading – I guess we've got an Eastern District of Washington case that says the tort wrongful discharge applies when an employee has been discharged, but there's a difference between discharge and non-renewal of a school district employee. So I tend to read these as saying those are – there's two avenues here. Now, that's a different question. So we've got a difference of opinion on the law. We do. And we have a difference of opinion on the fact is what your point is. Exactly, Your Honor. And of course referring to the McMinnie case, the Eastern District of Washington, if that's the –  Okay. So that cites to the Corsland case as the proposition that there is no – that a non-renewal is not a termination or a discharge. But if you look at the Corsland case, it doesn't – it found under certain different circumstances that there was no termination because the employee was invited to come back to work after his disability was – after he got better from his disability. That's not what happened here. Once Mr. Kresny was told either on May 8th or May 16th that by the end of September when his contract ran out, he was never invited back. So that's the legal distinction between Corsland. But more importantly, it's just this – it's this fiction that a lot of these school districts use. We didn't fire you. We just, quote, unquote, non-renewed you. So hang out for a couple more months and then you're gone. When in reality, the issue of whether a termination is a termination or a non-renewal or constructive discharge, it's an issue of fact. And here we have issues of fact as to whether Mr. Adkins knew before May 1st that Mr. Kresny had assisted Ms. Lovato in making that report. And I would point the court to ER 283 and 301. And on 283, again, a species of circumstantial evidence is evasive testimony. And on 283, Mr. Adkins is asked, you know, did Terry Bartolino – that's the civil rights person that the report was made to – did she tell you that David Kresny reported the sex abuse to her? He does not answer yes or no. He begins, it came from Jamie Lovato. If David was involved, that's no bearing. He's asked again. And another evasive answer, that would have been between Terry and her. And then if you go to 301, he's asked – this is ER 301 – I want to simply know if you were aware that Mr. Kresny and Ms. Lovato met with Mr. Bartolino on April 23rd or April 24th. He says, I was aware. So, again, that's awareness. And then he pauses and says, I was aware of Jamie Lovato. So, again, on summary judgment, reasonable inferences, non-moving party, and especially in wrongful discharge, whistleblowing cases, no one's going to get up there and admit to doing it, admit to knowing it. So under both the federal law and state law, courts allow circumstantial evidence to be used. And, again, to go back to the APR in April, I have to, again, just make the point that there is no requirement under the law that whistleblowing follow a specific format. Again, the law requires a disinterested observer, a jury. If he had simply sent a report and said, but somebody else might have figured out from that, that's not going to do it. There has to be some reason to be able to look at that report and treat that as something that the district responded to by thinking that he was blowing the whistle, because otherwise there's no retaliation there. So your effort to say that what he actually said in that report doesn't matter, that falls short for me. There's got to be something in that report that causes the district to retaliate against. And the bare report of the facts, that makes it hard for me to see what the district is allegedly retaliating against. If you look at the May 16th email that Ms. Bussell sent to the DOE the morning of May 16th, that's before Mr. Kresny and Mr. Lovato knew that they were being fired. Ms. Bussell says – But well after the process had started to not renew his contract. If Wellton School District is to be believed, but Ms. Bussell says – You told us that. In your brief you told us May 1st they started that process. May 1st is an email from Mr. Adkins' secretary to a lawyer sending send to contracts. But more to the point though, back to May 16th, in that email the DOE says I've looked at the APR and I'm determining that you need to pay that money back. So from the DOE's point of view, the Department of Education, that report from the APR was the event that triggered the DOE to get the money back. And again, if you go backwards from April 2023 on around the time when Mr. Kresny was choosing to put that information in the APR, you have not only Mr. Adkins whose deposition testimony I just went into, but you have also Ms. Anderson, and I'm going to ER 327, where she is asked when did you first find out that Mr. Kresny had reported the fund issue about the Hawaii trip to the Department of Ed? And again, the issue is knowledge before early May when per WSD the termination process starts. She responds, when we did the APR, when was that? I believe mid-April 2023. That's on ER 327. And then if you go on to ER 328, there's another break in the deposition and Ms. Anderson comes back just like her boss and corrects the testimony. So setting aside the language of the report, you have both decision makers aware at or around the time of the APR that Mr. Kresny was upset that this money had been used and he was going to report it, which he did. And then after that, May 1st, the termination process starts, and you have the DOE itself in that email saying we've looked at the APR. You got to pay your money back. I'll reserve the remaining time. I have a couple of questions. My first question is, can a participant in misconduct be a whistleblower? Ever. I think I need a lot more facts for that, Your Honor, but if you're saying this trip to Hawaii, he knew it had not been authorized. That's the sort of gravamen of the misconduct he was reporting, right? When he took the trip to Hawaii, it was his understanding that federal money was not going to be used to pay for it. So it had not been approved. He expected it might be approved. Ultimately, it was. But when he participated in the trip, he knew it had not been approved. And so isn't that the misconduct? The misconduct was the Hawaii was the Fed was welcome to school district using federal money to pay for the Hawaii trip when the district hadn't received permission yet. At the time that Mr. Kresni got on the plane to go to Hawaii, again, it was his understanding that he had to go. But more importantly, it was also in his understanding that federal money had not been used to pay for the trip. So to answer your question, Your Honor, if Mr. Kresni knew as a fact before he got on that plane that federal money had paid for the trip, then, yes, we wouldn't be here. He'd be participating in that and the court would be exactly right. But that's not what happened here. My second question is, isn't it correct that at one point in time, your client said, and I'm going to try to quote it, would not have been hesitant to call WSD's actions fraud. He would have been hesitant to call them fraud. Did he say that at one time? Yes, that's what the record says. But then going to the May 8th team's call with Miss again, he's not an attorney. He doesn't know what the elements of fraud are and all that, but he knew at base that it was wrong. That's why he put that information in the report in the APR. And then that's why he also made that team's call to Miss Bustle on May 8th. And on May 8th, that's when Donna Bustle deemed the use as fraud. And that's why Miss Bustle on May 16th emailed. Well, in a school district saying we've looked at the APR, you improperly use the money. You need to pay it back. So as a non-lawyer, yes, that's what Mr. Kresni said. OK, thank you. Yes, thank you. We'll give you time for rebuttal. Good morning, your honors. Rachel Stanley, on behalf of the Pelley's Welkin School District and Superintendent John Adkins. Now, I want to start back at the allegation of wrongful discharge. And as we were discussing, Mr. Kresni was not discharged because he was simply non-renewed of his employment contract. Council cited RCW 28A 405210 to say that he had to receive notice prior to May 15th. And because he did not receive notice, he was there was a question about whether he was discharged. That statute is for certificated employees that have a right to a continuing contract. Mr. Kresni was employed under a personnel contract with a stated end date of August or September 30th, 2023. He carried out the full terms of his contract. So your point is, I mean, it seems like every well, I don't want to overstate it. There's no disagreement that there's not an actual discharge, but he seems to be saying it's a constructive discharge. And your argument is it can't even be a constructive discharge because there's nothing to discharge you from, because here's the terms of the employment and that those were concluded. That is correct, Your Honor. What was he told when he was not renewed? He was told that, well, starting back in March of 2023. So less than two months into the position, he told his supervisor that he was planning to leave the position in his own words. That's not my question. OK. Yes, Your Honor. So what was he told when he was told we're not renewing? He was told that he was not good, not a good fit for the position. He failed to work with his coworkers and failed to work collaboratively with the school community and his coworkers. That sounds to me like reasons for a discharge. But he was not legally discharged as he continued to fulfill the entire. I mean, if you're strictly standing on the point that this was simply a non-renewal, then what you say, what the employer should say is we're not renewing. Thank you very much for your service. He was told that. Yes. But there was more than that. There was a reason they gave a reason. Correct. That is correct. And they didn't have to. I mean, the problem is that it creates an expectation that absent that he would have been renewed. And that that I mean, I don't know you. I don't read the case. The cases aren't so clear. They talk about there's a discharge and there's a non-renewal. But then can a non-renewal be a constructive discharge? I mean, I'm not sure that the cases are so clear as you articulated it that, look, as long as you finish it, we can do it for any reason. What if they said, well, we would have renewed you, but you're black? Would I mean, would we really say, oh, well, that was just a non-renewal. And I don't dispute that. Mr. Cressy may have had other causes of action under other statutes. He brought a wrongful discharge claim. Got it. OK. And moving to the submission of the APR. This was a requirement of the grant. This was something that was submitted by the district. It was certified by a different administrator. Miss Ewing at the district. Mr. Cresney, as the grant director, did hit submit on the grant. But again, it was submitted on behalf of the district. At no point did anyone at the district believe that would be improper or they should not include the APR, the Hawaii trip in the APR. And absent Mr. Cresney's inclusion of the trip in the APR, it still would have been included. This can't be a report of whistleblowing that a disinterested observer would have noticed to be evidence of impropriety. Who was the relevant federal officials that had the responsibility to OK the use of these funds? And in this instance, Donna Bustle was the contact at the Department of Education. I'm not sure if she had higher ups that she also had to go to your friends point that when Creskey got on the plane. He did or did not know that these funds had been approved. He he knew that they were not yet approved, but he believed that they would likely be approved after the trip was completed. That's all told him that that was his understanding of what Miss Bustle told him and what he represented to the school district that the school district relied on. But. Moving to the. Well, let me go back really quick, so the APR again, there's another problem with there's no evidence in the record that Superintendent Adkins, who was the legal decision maker for the non-renewal, knew of the contents of the APR. And then moving to the team's call with Miss Bustle, as your honor has has referenced, there is both the knowledge element and the temporal evidence evident element that are both missing in this case, as nobody at the district knew that Mr. Cresney had reached out to Miss Bustle by the time that the decision was made on May 1st, when Mr. Adkins contacted legal counsel. So, your honor, there's a lot of problems with Mr. Cresney's allegations here. We believe that the district court was proper in its decision and we ask this court affirm. Thank you, your honor. Honors. We'll give you two minutes for rebuttal. There is evidence in the record that Mr. Adkins and Miss Anderson knew before May 1st that Mr. Cresney was intending to go to the Department of Education and report the misuse of funds. That, again, is on E. R. 327, 328, 290 and 292. The principal signed that. So obviously the school district knew the report that had been made, knew that included a description of the Hawaii trip. I don't know how it could have failed to have include that because that's what fifty thousand dollars had been spent on. So there's no question but that the school district, via the principal at least, knew. But why should that be perceived by the school district or by Superintendent Adkins as whistleblowing? Because there was a report without reporting on the Hawaii trip. Set the report aside. This is going to the deposition testimony that both Adkins and Anderson knew in April that Mr. Cresney was going to make a report of some sort to the DOE. That is whistleblowing because that report was signed by the principal. So plainly, the school knew about the report. But why should that report be perceived as blowing a whistle? Because it alerted the government to the fact that the money was spent in on the Hawaii trip when the government, Miss Bustle, said as of March that it hadn't been approved yet. And Miss Bustle again, May 16th, emails the district saying, I've looked at the APR. You need to pay the money back. But more importantly, going back to what Adkins and Anderson knew and testified to before changing their testimony after breaks, they knew that Mr. Cresney was going to make a report of some sort. They didn't know the format that it was going to be in. They just knew that he was going to make a report. Was that his option? Didn't he have to make a report as the administrator of the grant? And that can't come as a surprise given the principal signed it. So I'm still not drawing the inference that I think you need to draw, which is that they would retaliate against him making the report that the principal knew he had made. He had to make a report. The issue is what the report contained. And he could have made a report in good faith that omitted the fact that this trip expended a big chunk of the grant. This report justified it under the terms of the grant. He conceivably could have done that to keep his job. Some people probably would have. He did not. He did the right thing. He reported it. And then he felt still conflicted about it. Contacted the DOE. They had a call on May 8th and then on May 9th. This is important, too. This goes to on May 9th. You have Miss Mr. Adkins or Miss Anderson emailing the DOE saying Mr. Adkins wants to talk to you. We asked Mr. Adkins and both of them in deposition. Why did you send this? And they gave more evasive answers. That just goes to the point that the district knew that Mr. Krasny was concerned about this misuse that he reported this misuse and the district, you know, the day after this team's call trying to get out in front of it to save from having to pay the money back. So we submit that there are lots of issues of fact here. It's for a jury to figure out whether Mr. Krasny's repeated objections to the use of the money was a contributing factor. And if you look at the clear and convincing evidence that the the district court didn't apply here, that would only exist if there was an email, say, between Mr. Adkins and Miss Anderson before the APR saying that we are going to terminate non-renew, whatever Mr. Krasny's employment and that doesn't exist here. There's no clear and convincing evidence to rebut the circumstantial evidence that reports were made and retaliation and discharge occurred. Thank you very much. Thank you to both counts for your arguments in the case. The case is now submitted and that concludes our arguments for the day.
judges: HAWKINS, CLIFTON, NELSON